UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BENTON, Plaintiff, v. BBBB BONDING CORPORATION, et al., Defendants. | No. 2:24-cv-1294 DC AC<br><br>ORDER |

Before the court is defendants' motion to compel further responses to various Requests for Production of Documents ("RFP"), Interrogatories, and Requests for Admissions ("RFA"), filed June 15, 2026. ECF No. 41. The court took this matter under submission (ECF No. 48) and now grants the motion in part and denies it in part, as follows.

**INTRODUCTION**

This action was commenced in the San Joaquin County Superior Court but removed to this court on May 3, 2024. ECF No. 1. The first amended complaint, filed June 20, 2024 (ECF No. 6), seeks to bring a class action asserting wage and hour violations by the corporate defendant, BBBB Bonding Corporation, and the individual defendants Clifford Stanley and Robert Hill-Venn as BBBB supervisors. ECF No. 6 at 1-2. The proposed class includes everyone who worked as a bail agent for BBBB in the four years prior to the commencement of

the action. ECF No. 6 at 3. The FAC asserts that the class members, including plaintiff, were compensated based on a fixed salary and commission basis that did not compensate for overtime, despite the class members working more than 8 hours per workday. ECF No. 6 at 5, 9. Defendants also failed to provide itemized wage statements (id. at 10), reimburse for expenses incurred in the discharge of their duties (id. at 11), either authorize 30-minute uninterrupted meal periods or pay premium wages for such periods missed (id. at 12), either authorize a 10-minute rest period per every four hours worked in a period or pay premium wages for such periods missed (id. at 12-13), or pay all amounts owed within 72 hours of an employee's discharge (id. at 10-11).

On May 20, 2026, plaintiff moved for certification of a class consisting of current and former BBBB bail agents who worked for the company on or after March 25, 2020, and various subclasses. ECF No. 31. This motion is currently pending before the assigned district judge. Defendants filed the current motion to compel further responses on June 15, 2026, asserting that the discovery at issue relates to their intended opposition to the motion for class certification. ECF No. 41.

## LEGAL STANDARD

As a general rule, discovery may be obtained regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts can limit discovery when:

> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Courts can also issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such an order can, *inter alia*, forbid disclosure or discovery, specify terms and conditions thereof, limit the scope to certain matters or prohibit discovery as to certain matters,

and prohibit the parties from sharing confidential commercial information or limit how they do so. Fed. R. Civ. P. 26(c)(1)(A), (B), (D), (G).

**A. Requests for Production of Documents**

RFPs ask a party to "produce and permit the requesting party or its representative to inspect, copy, test, or sample…items in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). For such purposes, documents are in the responding party's "control" if the party has "the legal right, authority, or practical ability to obtain the materials sought upon demand[,]" such as from an affiliate corporation. U.S. Intern. Trade Commission v. ASAT, Inc., 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting Camden Iron & Metal, Inc. v. Marubeni America Corp., 138 F.R.D. 438, 441 (D.N.J. 1991)); SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000).

Responsive documents include "any designated documents or electronically stored information…stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]" Fed. R. Civ. P. 34(a)(1)(A). In general, however, a party need not produce electronically stored information from sources that are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). If the responding party shows this is the case, the court may still order discovery and set conditions thereof if the propounding party shows good cause, in light of the limitations in Fed. R. Civ. P. 26(b)(2)(C). Fed. R. Civ. P. 26(b)(2)(B).

Any objections to a request must state whether any responsive materials were withheld as a result, and the propounding party must permit inspection of any responsive documents not withheld based on such objections. Fed. R. Civ. P. 34(a)(2)(C).

**B. Interrogatories**

"[T]to the extent it is not objected to," every interrogatory must "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "An interrogatory response must be complete in itself, explicit, and responsive[,]" but whether a particular response meets this standard "must be analyzed on a case-by-case basis in light of the particular question being

asked." V5 Technologies v. Switch, Ltd., 334 F.R.D. 297, 305 (D. Nev. 2019). As with RFPs, any objections "must be stated with specificity." Fed. R. Civ. P. 33(b)(4).

**C. Requests for Admission**

RFAs may ask a party to admit the truth of "facts, the application of law to fact, or opinions about either" or "the genuineness of any described documents." Fed. R. Civ. P. 36 (a)(1). If the party's response does not admit the truth of such an RFA:

> the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36 (a)(4).

**D. Motions to Compel**

A propounding party may move for an order compelling a party to answer an interrogatory or produce documents responsive to an RFP if it fails to do so. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). A discovery response that is evasive or incomplete constitutes a failure to respond. Fed. R. Civ. P. 37(a)(4). Propounding parties may also move for a determination of the sufficiency of an answer or objection to RFAs. Fed. R. Civ. P. 36(a)(6). If a court does not find the RFA answer compliant with the Federal Rules, it may either treat the RFA as admitted or order the party to file a supplemental answer. Id.

## ANALYSIS

**A. Interrogatories about the Claims**

Interrogatory Nos. 4, 8, and 11 ask about the substance of the claims and how they support plaintiff's motion for class certification. Specifically, they ask how plaintiff's claims are typical and representative of the claims of the putative class members, and what common issues of law or fact bind them all. ECF No. 47 at 3. Aside from vaguely responding that all class members "were subjected to the same unlawful policies and practices[,]" plaintiff objected to these as

invading the attorney-client and attorney work product privileges. Id.

Defendant argues that such a vague answer, without even identifying the policies and procedures at issue, is impermissibly vague in light of such boilerplate objections. Id. at 3-4. Plaintiff responds by citing Heitkoetter v. Domm, which refused to compel responses to interrogatories that "systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations[.]" Id. at 4 (quoting No. 1:22-CV- 0368-KES-BAM, 2024 WL 4979149, at *3, 2024 U.S. Dist. LEXIS 219314 at *7 (E.D. Cal., Dec. 4, 2024) (quoting Aldapa v. Fowler Packing Co. Inc., 310 F.R.D. 583, 591 (E.D. Cal. 2015))). The interrogatories in Heitkoetter, however, literally asked for "all facts on which you base" each denial in the responding party's answer to defendant's counterclaims. 2024 WL 4979149, at *2, 2024 U.S. Dist. LEXIS 219314 at *4. Plaintiff also cites Aldapa, which concerned a request for production of "all documents related to any of the allegations in the complaint." 310 F.R.D. at 591. Both cases involved discovery requests far broader than the interrogatories at issue here, which essentially ask plaintiff to outline the arguments that he would have to make in his motion for class certification. See Fed. R. Civ. P. 23(a)(2)-(4). Plaintiff cannot reasonably contend that making those arguments, either in his motion or in his responses, would breach attorney-client or work product privilege.

The motion to compel further responses to Interrogatory Nos. 4, 8, and 11 is therefore granted.

**B. Alternate Employers**

Interrogatory No. 15 asks for the names of all bail bond businesses from whom plaintiff has earned income since October 2019. ECF No. 47 at 5. Plaintiff responded that he worked for Bail Hotline before working for BBBB, and did not work for anyone else during his time with BBBB. Id. As to his time after, however, plaintiff argued such an inquiry is irrelevant to the case and therefore an unreasonable invasion of his privacy. Id.

Defendants now argue that the requested information is relevant to their argument that plaintiff has rerouted prospective employees to a competitor business, and therefore cannot be trusted as an adequate class representative. ECF No. 47 at 5-6. Defendants support this by citing

emails and related documents concerning Benton's former company cell phone. ECF No. 47 at 50-55. BBBB Human Resources employee Chantel Hill-Venn had called that number on April 3, 2024 after plaintiff's termination, only to find that he still answered the phone with "This is Mike." ECF No. 47 at 50. After Hill-Venn hung up, plaintiff texted her from the home phone listed on his BBBB business card, saying he "missed" the call and identifying himself as "Mike the bail bondsman." Id. at 52-53. She concluded that plaintiff had forwarded calls from his former work phone to his personal phone, which was against company policy and had been one of the reasons he was previously fired. Id. at 50. BBBB removed the call forwarding on April 9. Id. at 54.

Plaintiff disputes this narrative because while the text said that "Mike" "missed" the call, Hill-Venn says the call connected long enough for plaintiff to identify himself. Id. at 6-7. This could be a purely semantic distinction without a difference, as one might colloquially say they "missed a call" if the call connected but the caller did not say anything to the recipient after he answered the phone. More pressingly, assuming that plaintiff did in fact forward calls to his personal phone number, he now asks how that would be relevant to his adequacy as a representative. Id. at 6.

The connection between the two is not as remote as plaintiff asserts. If plaintiff was in fact forwarding calls to his cell phone, the question becomes why. BBBB is right to wonder if plaintiff then used these calls to siphon customers to other businesses. If he is now working for a BBBB competitor, and especially if he used BBBB resources and connections to advance his career in such a company, he has a vested interest in financially damaging BBBB that the putative class does not share.

Plaintiff cites the fact that he has already denied in discovery that he received any BBBB calls or business since his termination. Id. at 6. He also asserts that defendant refused to produce Hill-Venn for a deposition about these emails. Id. at 7. Aside from the fact that plaintiff could move to compel such deposition himself, he is correct that these raise doubt as to whether plaintiff in fact engaged in misconduct that affects his credibility. Yet even plaintiff acknowledges that this motion does not turn on a final adjudication of this factual dispute. Id. at

6. That defendants have presented enough evidence to suggest the existence of a genuine dispute entitles them to further discovery about the matter.

Finally, plaintiff reiterates his privacy objection, asserting that defendants cannot "delve into [his] personal finances following [his] employment separation" from BBBB. Id. at 7. This overstates the nature of this interrogatory. Plaintiff cites no authority suggesting a valid privacy interest in the names of the companies he has worked for since leaving BBBB, particularly those in the same industry.

The motion to compel further responses to Interrogatory No. 15 is granted.

**C. Non-BBBB Bail Bonds Business and Income**

RFP Nos. 4-6 collectively ask for written communications, notes therefrom, and call and text logs reflecting any discussions of "bail related services with individuals who work with bail-bonds companies other than Defendant BBBB, between October 2019 to date." ECF No. 47 at 7, 9-10. Plaintiff responded that no such documents existed for the duration of his employment with BBBB, but objects to the rest as irrelevant and an unreasonable invasion of privacy. Id. at 7, 9-11.

RFP No. 8, meanwhile, asks for documents reflecting any income plaintiff earned since October 2019 by engaging in conduct that he was only able to engage in because he held a Bail Agent license, whether with BBBB or a competitor. Id. at 13. As with RFP Nos. 4-6, plaintiff denied earning such income from anyone other than BBBB during his employment there, advising defendants to check their own records for such income. Id. at 14. As for the period after his termination, plaintiff again objects based on relevancy and privacy. Id. at 13.

As with Interrogatory No. 15, these RFPs seek information that could negatively impact plaintiff's ability to serve as representative of the class he seeks to certify. ECF No. 47 at 8. Taking calls that rightfully belonged to BBBB, letting the customer think they are speaking to someone acting in the capacity of a BBBB representative, and redirecting them to another company, could constitute fraud, theft or misappropriation. Id. at 8. This affects plaintiff's suitability as class representative and is therefore relevant even for records postdating plaintiff's employment, though defendants are willing to narrow the request to such records predating June

2024. Id. As discussed above, the evidence regarding call forwarding from plaintiff's former work phone to his personal one gives this theory enough credence to merit further discovery. See supra B.

Plaintiff responds that the requested production would, at best, give defendants a list of plaintiff's bail bond clients over an eight-month timespan. ECF No. 47 at 9. Defendants would then have to ask each of them which number they called when they first met plaintiff – his personal line or his BBBB phone. Id. at 9, 15. Plaintiff asks why defendants could not instead ask for all documents supporting their allegation that he diverted BBBB business to competitors. Id. at 9, 15.

Whether discovery is unreasonably cumulative hinges on the burden plaintiff would face when complying with such an order, not the burden of the propounding party when following up on such production. See Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff provides no evidence that responding to his proposed inquiry would be less burdensome than the RFPs at issue. Aside from a blatant denial that he ever engaged in such redirection, he would likely need to review the exact same documents that defendants are instead asking him to produce outright so they can handle the inspection themselves.

The motion to compel further responses to RFP Nos. 4-6 and 8 is granted.

**D. Circumstances of plaintiff's termination**

RFA Nos. 3, 15, and 19 ask plaintiff to admit that while working for BBBB, he referred a prospective bail agent seeking employment with BBBB to another bail bond company; asked for a raise after doing so; and was reprimanded by Robert Venn for such a referral. ECF No. 47 at 15. Plaintiff objects that none of these matters are relevant to the claims underlying this action, and now describes these RFAs part of a "harassing fishing expedition[.]" Id. at 15-16.

Defendants respond that such dishonest conduct reflects on plaintiff's credibility as a representative of the class he seeks to certify. Id. at 16. As discussed above, the evidence of call forwarding renders this contention more than speculative, and entitles defendants to further discovery as to plaintiff's credibility and conflicts of interest. See supra B-C. The motion to compel supplemental responses to RFA Nos. 3, 15, and 19 is granted.

**E. Unemployment Insurance Application Discovery**

RFP No. 7 asks for production of any records related to unemployment insurance compensation applications field with the California Employment Development Department ("EDD") based on his employment with BBBB, "including but not limited to applications, notices, findings of fact, decisions issued, appeals, and the results of any appeals." ECF No. 47 at 12. Aside from objecting based on relevance, plaintiff argues that these documents were privileged under California Unemployment Insurance Code sections 1094(a), 1094(b), and 2111. Id. Plaintiff invokes this privilege again in response to RFA Nos. 10-14, which collectively ask him to admit that plaintiff filed two EDD claims and gave a different reason for his termination from BBBB on each application. Id. at 17.

When "state law supplies the rule of decision" in a civil case, state law governs whether a privilege exists. Fed. R. Evid. 501. This action that was removed to federal court based on diversity jurisdiction, with the first amended complaint mostly asserting claims based on the California Labor Code. ECF No. 6 at 8-13. Privilege is therefore governed by state law, under which any information obtained by the EDD in administering the California Unemployment Insurance Code is confidential and inadmissible in civil proceedings. Cal. Unemp. Ins. Code § 1094(b). The California Supreme Court has confirmed that these sections of the Code reflect a legislative intent to create an evidentiary privilege. Crest Catering Co. v. Superior Court of Los Angeles County, 62 Cal.2d 274, 277 (Cal. 1965).

Defendants argue that this privilege only precludes the use of such EDD records to establish some offset against lost wages as a form of damages, which is not an issue here. ECF No. 47 at 18. The Unemployment Insurance Code includes no such limitation. It instead states that the information released to the EDD is inadmissible in any action of special proceeding that neither arises out of the provisions of the Unemployment Insurance Code nor is listed in section 1095 thereof. Cal. Unemp. Ins. Code § 1094(b). Defendants make no effort to identify which exception applies here, nor has the court found one that does.

The asserted privilege permits plaintiff to decline to answer RFP No. 7 and RFA Nos. 10-14. The motion to compel further responses to these requests is denied.

**F. Admissions as to meal and rest breaks**

RFA Nos. 20 and 21 ask plaintiff to admit he was "able to take" meal and rest breaks "but chose not to take them." ECF No. 47 at 18-19. RFA No. 23 asks whether anyone at BBBB "prevented" plaintiff from taking meal breaks, whereas RFA No. 25 asks if anyone at BBBB "discouraged" him from doing so. Id. at 18. RFA Nos. 22 and 24, respectively, ask the same regarding rest breaks. Id. at 19. In response to each RFA, plaintiff "denies Plaintiff was advised, authorized, and permitted to take" the corresponding type of period "in accordance with California law." Id. at 18-19, 46-48.

These responses somewhat reflect plaintiff's simultaneous objection that the terms "meal breaks" and "rest breaks" were undefined, vague, and ambiguous as used in these RFAs. Id. Plaintiff reiterates this objection when opposing this motion, arguing that these terms have specific definitions under the California Labor Code and applicable Wage Orders. Id. at 20. In other words, because defendants' definition of a meal break and rest period in these RFAs was unclear, plaintiff qualified his response to define these terms based on the laws underlying his claims.

The definitional scope of "meal break" and "rest break" is not the basis for defendants' motion, however. Defendants argue that there is a difference between whether plaintiff was "able" to take meal or rest breaks, rather than being discouraged or prevented, and whether he was "advised, authorized, or permitted" to do so. Id. In other words, defendants argue that plaintiff answered an RFA that was never propounded rather than the ones that were. Id.

The court agrees with defendants' conclusion, but not with its reasoning. The difference between "able" and "permitted" could be just a semantic distinction, as both ability and permissibility concern whether plaintiff actually could take whatever break he was entitled to take. Yet by combining "permitted" with "advised" and "authorized" into a single denial for each break, plaintiff makes it unclear which one of these he denies occurred. His denial could mean that no one "advised" him to take a break and therefore did not think to take one, or it could mean that he tried to take one but then was prohibited by a supervisor and therefore not "permitted" to take one. This also renders such a compound answer, which focuses on actively granting

permission to take such breaks, completely nonresponsive to RFAs concerning whether anyone tried to keep plaintiff from taking them.

The motion to compel further responses to RFA Nos. 20-25 is granted. Plaintiff must answer each RFA individually, using the same language as the RFA at issue, without providing compound responses that make it unclear which part constitutes the basis for any denial. Plaintiff may, however, explain how any breaks that he did take differ from meal and rest periods as defined in the California Labor Code and applicable Wage Orders.

**G. Sanctions**

Pursuant to Federal Rule of Civil Procedure 37(a)(5), when a motion to compel is granted the court must award to the moving party reasonable expenses, including attorney's fees, unless certain exceptions apply. Exceptions include where the opposing party's response or objection was substantially justified (Fed. R. Civ. P. 37(a)(5)(A)(ii)) and where "other circumstances make an award of expenses unjust" (Fed. R. Civ. P. 37(a)(5)(A)(iii)).

Here, the motion to compel was granted in part, and denied in part. In such circumstances the court may still apportion fees. Fed. R. Civ. P. 37(a)(5)(c). However, at no point during the joint statement do defendants request such fees. Additionally, as discussed above, the majority of discovery requests for which this motion is granted are based on the same premise – investigation into plaintiff's suitability as a class representative – whereas plaintiff prevailed in showing an evidentiary privilege that defendants failed to fully acknowledge. No party is clearly more culpable than the other, such that plaintiff should be monetarily penalized.

The court finds that no award of sanctions is appropriate.

**CONCLUSION**

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Compel (ECF No. 41) is:
    a. GRANTED as to Interrogatories 4, 8, 11, and 15
    b. GRANTED as to RFP Nos. 4-7 and 8, for any responsive documents predating June 2024
    c. GRANTED as to RFA Nos. 3, 15, and 19.

d. GRANTED as to RFA Nos. 20-25, with instructions to answer each RFA separately, using the same language as each individual RFA, but with leave to include information as to how any breaks plaintiff took while working for BBBB differed from meal and rest periods as defined by applicable law; and

e. DENIED as to RFP No. 7 and RFA Nos. 10-14.

2. Plaintiff is ORDERED to respond to all Interrogatories and RFAs for which this motion is granted, and turn over all documents responsive to the RFPs for which this motion is granted, within 10 days of this order.

IT IS SO ORDERED.

DATED: August 12, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE